## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT GREENEVILLE

| | | | |
|---|---|---|---|
| DALLAS J. HARTLEY, JR., | ) | | |
| Plaintiff, | ) ) ) | | |
| v. | ) ) | No. | 2:17-CV-199-DCLC-CRW |
| SOUTHERN HEALTH PARTNERS and CARTER COUNTY, TENNESSEE, | ) ) ) ) | | |
| Defendants. | ) | | |

### MEMORANDUM OPINION

Defendants Southern Health Partners ("SHP") and Carter County, Tennessee, have filed separate motions for summary judgment in this pro se prisoner's civil rights action for violation of 42 U.S.C. § 1983 [Docs. 40 & 43]. Upon consideration of the parties' pleadings, the presented evidence, and the applicable law, the Court finds that summary judgment should be **GRANTED** in favor of Defendants, and this action should be **DISMISSED**.

### I.    PROCEDURAL HISTORY

On September 26, 2017, Plaintiff Dallas J. Hartley, Jr., filed the instant action alleging that Defendants Carter County, Tennessee, and its contract medical provider, SHP, violated his constitutional rights by refusing to surgically repair his hernia while he was housed at the Carter County Detention Center ("CCDC") [Doc. 1]. After screening Plaintiff's complaint in accordance with the Prison Litigation Reform Act, the Court permitted his allegations to proceed against Defendants SHP and Carter County, Tennessee [Doc. 4].

SHP filed its answer to Plaintiff's complaint on February 2, 2018 [Doc. 13]. Defendant Carter County filed its answer on April 20, 2018 [Doc. 17]. On August 1, 2019, SHP filed a motion for summary judgment [Doc. 40]. The following day, Carter County filed a motion for summary

judgment, which it later supplemented to include an exhibit inadvertently omitted from the original motion [Docs. 43 & 46]. Plaintiff filed an initial response to SHP's statement of facts in support of its motion for summary judgment [Doc. 55], and he thereafter sought and obtained an extension of time within which to file a further response to the summary judgment motions [Docs. 56 & 64]. However, Plaintiff failed to submit a response by the November 1, 2019, deadline imposed by the Court [Doc. 64]. Therefore, this matter is ripe for review.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd*, 224 F.3d 797, 800 (6th Cir. 2000). Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611 (6th Cir. 2009) (internal quotation marks omitted).

The moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). In order to successfully oppose a motion for summary judgment, a party "'must set forth specific facts showing that there is a genuine issue for trial'" and "'may not rest upon the mere allegations or denials of his pleading.'" *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).

A district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded, however. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). Rather, the court is required to, at a minimum, examine the motion to ensure that the movant has met its initial burden. *Id*. In doing so, the court "must not overlook the possibility of evidentiary misstatements presented by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407 (6th Cir. 1992). The court must "intelligently and carefully review the legitimacy of [] an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Id.* In the absence of a response, however, the Court will not "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Id*. at 410. If the court determines that the unrebutted evidence set forth by the moving party supports a conclusion that there is no genuine issue of material fact, the court will determine that the moving party has carried its burden, and "judgment shall be rendered forthwith." *Id*. (alteration omitted).

### III. SUMMARY JUDGMENT EVIDENCE

Plaintiff was arrested on June 15, 2016 on drug charges and a violation of probation and was transported to CCDC [Doc. 1 p. 8; Doc. 46-1 p. 8; Doc. 43-2]. Plaintiff, a State inmate, had previously been detained at CCDC on different occasions and was aware he could submit medical requests directly to the medical department through the facility's kiosk system [Doc. 40-1 p. 2, 10; Doc. 43-1 ¶ 10, Doc. 46-1 p. 4]. At CCDC, medical decisions are made by employees of SHP, who provide medical services to inmates at CCDC through a contract with Carter County [Doc. 43-1 ¶ 12].

Around the end of June, Plaintiff discovered a knot on his lower stomach about the size of a quarter [Doc. 1 p. 8.]. On August 5, 2016, Hartley submitted his first formal medical request

relating to his stomach issues and was evaluated by a nurse four days later on August 9, 2016 [Doc. 40-2 ¶¶ 5-8; Doc. 43-3]. The nurse noted Plaintiff had a raised area on his upper left abdomen approximately two inches in diameter and referred Plaintiff to a nurse practitioner for evaluation [Doc. 40-2 ¶ 8].

On August 14, 2016, Plaintiff was evaluated by the nurse practitioner, who noted Plaintiff had experienced separation of the abdominal muscles but not any protrusion of the organs through the abdominal wall [*Id.* at ¶ 9]. An ultrasound was ordered [*Id.* at ¶ 11]. The nurse practitioner testified that she was authorized to transfer Plaintiff to the hospital for surgery if she believed it to be necessary, but she determined that Plaintiff's hernia was not an emergency medical condition requiring immediate surgery [*Id.* at ¶¶ 9-10, 12]. On August 16, 2016, the nurse practitioner gave orders to schedule an appointment with Dr. Burns at ETSU Surgery for evaluation of Plaintiff's hernia, and she ordered that Plaintiff receive Tylenol for pain relief [*Id.* at ¶ 12; Doc. 43-4]. During this time – in August 2016 – Plaintiff attempted to enroll in a work program at CCDC to earn good-time credits [Doc. 40-1 p. 4].

On September 8, 2016, Plaintiff submitted medical requests complaining of constipation and was started on medication to address that issue [Doc. 40-2 ¶ 13]. On September 9, 2016, Plaintiff submitted a medical request complaining that the laxatives prescribed to him were not working and complaining of additional pain up into his chest [*Id.* at ¶ 14]. The same day, an abdominal x-ray was performed that showed no free air or evidence of bowel obstruction [*Id.*]. The radiologist's impression was constipation, so the current treatment was continued [*Id.*].

An appointment was scheduled for Dr. Burns to evaluate Plaintiff, but that appointment was postponed twice by the doctor's office and then ultimately rescheduled for October 27, 2016 [Doc. 40-2 ¶¶ 15-16]. Carter County failed to transport Plaintiff to that appointment due to

4

miscommunication with the transport order [*Id.* at ¶ 16]. On November 5, 2016, Plaintiff was transferred to the Unicoi County Sheriff's Department [Doc. 40-1 p. 4]. On December 7, 2016, Plaintiff was transferred back to CCDC and was on the same date rescheduled for a surgical consult with Dr. Digby at Sycamore Shoals [Doc. 40-1 p. 5; Doc. 40-2 ¶ 17; Doc. 43-4; Doc. 46-1 p. 5-6].

Plaintiff was subsequently evaluated by physicians Dr. Digby and Dr. Kiebler[1] [Doc. 40-1 p. 5-7]. Dr. Digby found that Plaintiff did not require surgery in December 2016, while Dr. Kiebler recommended in January 2017 that Plaintiff be referred back to ETSU Surgery for evaluation for surgical repair [Doc. 40-1 p. 6-7; Doc. 40-2 ¶ 19; Doc. 43-6].

On March 13, 2017, Plaintiff saw a surgeon at ETSU Surgery who advised Plaintiff that though he would need surgery for the hernia repair, the surgery was not an emergency and did not have to be done immediately [Doc. 40-1 p. 11-12; Doc. 40-2 ¶ 22-23]. After that evaluation, Plaintiff again requested a release that would allow him to work and receive good-time credit [Doc. 40-1 p. 8-9]. Thereafter, Plaintiff was transferred to Bledsoe County Correctional Facility on or about March 29, 2017, before subsequently being transferred to Northwest Correctional Complex, where he currently is housed [Doc. 1 p. 9-10; Doc. 40-1 p. 8; Doc. 40-2 ¶ 23].

IV. **LAW & ANALYSIS**

    A. **Deliberate Indifference**

The Constitution does not guarantee a prisoner an "unqualified access to health care," but rather, provides the assurance that the care provided is constitutionally adequate. *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). The alleged denial of constitutionally adequate medical care to a prisoner implicates the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and *wanton* infliction of pain."

---

[1] In some documents, Dr. Keibler is identified as "Dr. Keebler" [*See* Doc. 40-2 ¶ 19].

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis in original). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994).

To satisfy the objective component, a plaintiff must show that he experiences a sufficiently serious medical need that failure to address it would result in the unnecessary or wanton infliction of pain, or that it would pose a substantial risk of serious harm. *See Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013); *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). Where some treatment has been provided, and the allegation is that the medical treatment was inadequate, the objective requirement requires the plaintiff to show "care so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citation and internal quotation marks omitted).

In order to meet the subjective requirement, an inmate must show more than negligence in failing to render adequate medical care. *See, e.g., Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Rather, deliberate indifference is demonstrated only where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

Accordingly, the Sixth Circuit has held that "there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have *consciously* expos[ed] the patient to an *excessive* risk of *serious* harm." *Rhinehart*, 894 F.3d at 738-39 (citation and internal quotation marks omitted) (emphasis in original).

The competent summary judgment evidence in this case demonstrates that SHP staff evaluated Plaintiff within days of his initial complaint and found Plaintiff did not require emergency medical treatment. However, SHP staff did provide Plaintiff with medication for pain and constipation, provide radiology testing that included ultrasound and x-rays, and scheduled him for surgical consults. Plaintiff continued to receive medication while he awaited surgical evaluation of his hernia. While it is clear that Plaintiff's surgical evaluation was delayed, there is no evidence that SHP or Carter County intentionally delayed that evaluation. Moreover, Plaintiff was transported to his surgical appointments by Carter County, and no evaluating physician opined that he needed emergency surgery. In fact, as late as March 2017, Plaintiff maintained that he was physically capable of participating in the work release program at CCDC.

In sum, the record demonstrates that SHP provided Plaintiff treatment related to his hernia, and Carter County transported him to outside care providers on at least three occasions. None of these consults yielded an opinion that Plaintiff's hernia required immediate surgical treatment. Therefore, the Court finds that there is no evidence that Defendants SHP or Carter County exposed Plaintiff to an excessive risk of serious harm such as to establish deliberate indifference.

### B. Entity Liability

The Court otherwise notes that, even if Plaintiff's allegations were sufficient to create a fact issue, both SHP and Carter County would nonetheless be entitled to dismissal unless the alleged constitutional violation occurred due to a policy or custom, and SHP and/or Carter County was deliberately indifferent to the known or obvious consequences of that policy or custom. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690-91(1978). This is because the law requires a distinction between an entity's acts and those of its employees, thereby limiting municipal liability "to action for which the [entity] is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986). Accordingly, entity defendants are not responsible for a

constitutional injury unless the plaintiff can identify a policy or custom of the entity that, when executed, served as "the moving force of the constitutional violation." *Polk v. Cty. of Dodson*, 454 U.S. 312, 326 (1981); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1984).

The Sixth Circuit has held:

> A plaintiff may only hold a local government entity liable under § 1983 for the entity's own wrongdoing. A local government entity violates § 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights. A city's custom or policy can be unconstitutional in two ways: 1) facially unconstitutional as written or articulated, or 2) facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers. Where the identified policy is itself facially lawful, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." In other words, the risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be "plainly obvious."

*Gregory v. City of Louisville*, 444 F.3d 725, 752-53 (6th Cir. 2006) (internal citations omitted).

Plaintiff appears to claim that a custom or policy existed of refusing to schedule necessary treatments to avoid costs. However, Plaintiff has not identified any policy of SHP that prevents medical staff from authorizing necessary medical treatment for inmates based on the cost of the procedure, and Family Nurse Practitioner Franchesca Shoun has testified that no such policy exists [Doc. 40-2 ¶ 27].

Additionally, Plaintiff has not produced any proof of a "relevant practice [that is] so widespread as to have the force of law" so as to viably claim that a custom or practice existed of refusing to schedule necessary medical surgery to avoid costs. *Board of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). SHP was authorized to order treatment if such was necessary, and Carter County would have deferred to those medical decisions and ensured treatment regardless of an inmate's ability to pay for the treatment [Doc. 40-2 at ¶ 27; Doc. 43-1 ¶

13]. It is not unconstitutional for municipalities and their employees to "rely on medical judgments made by medical professionals responsible for prisoner care." *Graham ex. rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) (citation omitted). Moreover, it is undisputed that Plaintiff was a State inmate at the time of the events giving rise to this lawsuit, and as such, the State — not SHP or Carter County — was responsible for the costs of his medical treatment [Doc. 40-1 p. 10].

Therefore, the Court finds that no genuine issue of material fact remains for trial, as Plaintiff was evaluated by multiple medical providers and has offered no evidence that would indicate he was denied necessary medical care. Moreover, the Court finds, Plaintiff has failed to produce any evidence of a policy or custom of either Defendant that serves as the moving force behind any constitutional violation alleged. Defendants are entitled to summary judgment.

## V. CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment [Docs. 40 & 43] will be **GRANTED**, and this action will be **DISMISSED**. Defendants' motion to dismiss this action for Plaintiff's failure to file a pretrial narrative [Doc. 60] will be **DENIED** as moot. The Court hereby **CERTIFIES** that any appeal from this order would not be taken in good faith. Thus, should Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER**.

**ENTER:**

*/s/ Clifton L. Corker*
United States District Judge